Filed 7/31/25  DeGeorge v. Taffae CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARCO DeGEORGE et al., | B333181 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 23SMCP00177) |
| v. | |
| PETER TAFFAE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Young, Judge. Affirmed.

Barrington Legal, Eamon Jafari and Jacob R. Gould for Defendant and Appellant.

Andrew P. Holland, Cynthia C. Mullen and Jenna W. Logoluso for Plaintiffs and Respondents.

————————————————

Peter Taffae appeals from the trial court's judgment confirming an arbitration award to Marco and Kim DeGeorge arising from mutual breaches of an earlier settlement agreement. Taffae argues the trial court erred in confirming the award because the arbitrator exceeded his powers. We disagree, and we affirm the judgment.

## FACTUAL BACKGROUND[1]

Peter Taffae lives next door to Marco and Kim DeGeorge[2] and their children in Santa Monica, California. Taffae and the DeGeorges do not get along, and between 2017 and 2019, they litigated various tort claims against each other. In February 2019, they signed a Settlement Agreement to resolve that litigation. The Settlement Agreement included a mutual Stay-away Agreement in which Taffae and the DeGeorges essentially promised to leave each other alone. The Stay-away Agreement provided for liquidated damages of $5,000 "if any Party breaches the terms of [the Stay-away] Agreement." The DeGeorges and Taffae agreed to arbitrate any disputes arising out of the Stay-away Agreement, and agreed "the prevailing Party shall be awarded reasonable arbitration fees, attorney's fees and costs not to exceed $100,000."

On February 2, 2020, Taffae and the DeGeorges were separately preparing to host guests for the Super Bowl. Taffae lit

---

[1] These facts are drawn from the factual findings in the arbitrator's amended arbitration award, which we accept as true. (See *Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 (*Richey*).)

[2] We refer to Marco DeGeorge as Mr. DeGeorge and Kim DeGeorge as Mrs. DeGeorge. We refer to both individuals together as "the DeGeorges."

a smoker barbeque in his backyard, and the DeGeorges noticed smoke and some embers coming into their yard. Mr. DeGeorge had a short conversation with Taffae about the smoke and embers, but the issue was not resolved. The DeGeorges brought their children inside their home and called the Santa Monica Fire Department. Fire personnel responded, spoke with Mr. DeGeorge, and "apparently decided there was no imminent fire danger." They left, and "the DeGeorges then contacted the [Santa Monica] [P]olice [D]epartment." The police responded. "After one or both of the DeGeorges discussed the situation with a responding police officer, the officer left without taking any action."

Later that day, the DeGeorges played music at a volume Taffae wrongly considered to be unreasonably loud. Taffae recorded videos of the DeGeorges and their family and guests from his residence or from across the street.

Approximately one year later, around April 23, 2021, Mrs. DeGeorge was walking in the neighborhood with her children and some friends. Taffae followed them for several blocks and apparently recorded them on a cell phone, "despite their attempt to take evasive measures."

## PROCEDURAL HISTORY

Taffae initiated arbitration proceedings on April 22, 2021. In January 2022, Taffae filed a first amended complaint naming Mr. DeGeorge and Mrs. DeGeorge as "Respondents." Taffae alleged "Respondent" violated the Settlement Agreement because: "Either M[arco] DeGeorge or K[im] DeGeorge, acting jointly or in their individual capacity called the Santa Monica Fire Department and/or the Santa Monica Police Department (government agencies), knowing there was no emergency or

3

threat of imminent bodily harm, and without seeking to resolve the issue informally through The Party's respective counsel during a 10-business day window after the issue was identified in writing by counsel for the complaining party, as is required under the terms of the Settlement Agreement." He alleged that conduct violated clause 1(j) of the Stay-away Agreement.

The following month, the DeGeorges served Taffae with an offer to compromise pursuant to Code of Civil Procedure section 998.[3] The pertinent terms were: "Taffae . . . and [the DeGeorges] each dismiss the arbitration with prejudice, with no payment (damages, costs, or fees) due to any party. In exchange for these mutual dismissals, the parties will also enter into a mutual release of all known and unknown claims and damages up and through dismissal of the arbitration. The Mutual Stay-Away Agreement . . . will remain in full force and effect." Taffae did not accept the offer.

The DeGeorges unsuccessfully demurred to the first amended complaint. Thereafter, in April 2022, Mr. DeGeorge and Mrs. DeGeorge filed separate answers to the first amended complaint. Mr. DeGeorge alleged several affirmative defenses and two counterclaims, specifically, that Taffae breached the Stay-away Agreement by "(1) making or pretending to make recordings of the DeGeorge property, family, and guests on February 2, 2020, and (2) stalking Kim DeGeorge in Santa Monica on April 23, 2021." Mrs. DeGeorge's answer asserted several affirmative defenses but no counterclaims.

The arbitration was held on several days in September 2022 and October 2022. The arbitrator heard testimony from

---

[3] All further undesignated statutory references are to the Code of Civil Procedure.

4

Taffae, the DeGeorges, and several witnesses. In the initial arbitration award dated January 3, 2023, the arbitrator determined Taffae had shown the DeGeorges violated the Stay-away Agreement by "calling the police out to the residences" on February 2, 2020. He rejected Taffae's claims regarding other purported breaches by the DeGeorges on that date, including: (1) calling the fire department; (2) "playing unreasonably loud music"; and (3) making "misrepresentations [to] the fire and police department[s]." The arbitrator also considered the DeGeorges' claims Taffae breached the Stay-away Agreement on February 2, 2020, and April 23, 2021, by stalking. He concluded no breach occurred on February 2, but that Taffae committed a breach when he followed and recorded Mrs. DeGeorge and her children and friends on April 23. Ultimately, he "award[ed] Mr. Taffae $5,000 on his claims against the DeGeorges, and the DeGeorges $5,000 on their claims against Mr. Taffae. As a result of the equal, offsetting amounts, neither party shall pay the other any amount." The arbitrator further concluded the parties would bear their own fees and costs because neither party prevailed.

A week later, the DeGeorges moved to correct the award as to fees and costs. They argued because Taffae did not accept their February 2022 offer to compromise and did not obtain a more favorable judgment or award from the arbitration, he should pay their post-offer costs and attorney fees under section 998.[4] After receiving briefing from the parties, the arbitrator decided to amend the award to provide for fees and costs pursuant to section 998. He issued an amended arbitration award on March 16, 2023.

---

[4]     Attorney fees are available as post-offer costs under section 998 when, as here, the underlying contract authorizes fees. (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1112–1113.)

The factual findings were unchanged from the original award, but it added an award of $100,000 to the DeGeorges for their attorney fees and costs.

On April 3, 2023, the DeGeorges petitioned the Superior Court of Los Angeles County to confirm the award. Taffae opposed confirmation and requested the court vacate the award or correct it to determine he was the prevailing party. The court rejected Taffae's challenges and granted the DeGeorges' petition to confirm. Judgment was entered on July 28, 2023. (See §§ 904.1, subd. (a)(1), 1287.4.) Taffae timely appealed. (See Cal. Rules of Court, rules 1.10(a), 8.104(a)(1)(B).)

## DISCUSSION

### I. The Trial Court Did Not Err in Confirming the Arbitration Award

Courts may vacate an arbitration award if one of several statutory grounds is satisfied. (See § 1286.2, subd. (a).) Taffae argues this award should have been vacated because "the arbitrator[] . . . 'exceeded [his] powers.' " (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 366 (*Advanced Micro*).) We disagree.

#### A. Principles Governing Judicial Review of Arbitration Awards

"When parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the arbitrator's understanding of the case, to reach a decision." (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1184 (*Gueyffier*); see also *Advanced Micro*, *supra*, 9 Cal.4th at p. 372 ["it is for the arbitrators to determine what issues are 'necessary'

6

to the ultimate decision"].) But those broad powers necessarily " 'derive from, and are limited by, the agreement to arbitrate.' " (*Gueyffier*, at p. 1185.) If an arbitrator makes an award " 'in excess of those powers,' " a court may correct or vacate it. (*Ibid.*; see §§ 1286.2, subd. (a)(4), 1286.6, subd. (b).) "[H]owever, this provision does not supply the court with a broad warrant to vacate awards the court disagrees with or believes are erroneous." (*Gueyffier*, at p. 1184.)

"An arbitrator has exceeded his or her powers if the arbitrator 'strayed beyond the scope of the parties' agreement by resolving issues the parties did not agree to arbitrate' [citation], ordered an unauthorized remedy [citation], or resolved non-arbitral issues [citation]." (*City of Richmond v. Service Employees Internat. Union, Local 1021* (2010) 189 Cal.App.4th 663, 669–670; see also *California Union Square L.P. v. Saks & Co. LLC* (2020) 50 Cal.App.5th 340, 348 ["Arbitrators may exceed their powers when they act in a manner that is not authorized by the arbitration agreement."].) To "determin[e] whether an arbitrator exceeded his or her powers, we look to the parties' arbitration agreement to see if and how it limited the arbitrator's authority." (*California Union*, at p. 349.) Because "an agreement to arbitrate is a contractual matter, . . . a party cannot be required to arbitrate an issue or grievance it has not agreed would be subject to arbitration." (*Pacific Crown Distributors v. Brotherhood of Teamsters* (1986) 183 Cal.App.3d 1138, 1143.)

We " 'conduct[] a de novo review, independently of the trial court, of the question whether the arbitrator exceeded the authority granted him by the parties' agreement to arbitrate.' " (*Ajida Techs. v. Roose Instruments* (2001) 87 Cal.App.4th 534, 541 (*Ajida*).) "In undertaking our review, however, 'we must draw

7

every reasonable inference to support the award.' " (*Ibid.*) Moreover, we look " 'to whether the award is drawn from the agreement *as the arbitrator interpreted it* or derives from some extrinsic source. . . . [W]here an arbitrator is authorized to determine remedies for contract violations, "courts have no authority to disagree with his honest judgment in that respect. . . . [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." ' " (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1447 (*Greenspan*); see also *Advanced Micro*, *supra*, 9 Cal.4th at p. 381 ["The award must be related in a rational manner to the breach (as expressly or impliedly found by the arbitrator)."].)

## B. Taffae Has Not Shown the Arbitrator Exceeded His Powers

Taffae argues "the Arbitrator acted beyond his jurisdiction by issuing an award on a non-existent counterclaim that was never submitted for arbitration and by improperly merging separate contract breaches into a single liability determination." We reject his arguments, and we agree with the trial court the arbitrator did not exceed his powers.

The DeGeorges and Taffae agreed to arbitrate issues arising from the Stay-away Agreement, including breaches thereof, and the arbitrator considered and decided each breach allegedly committed by either party to the Stay-away Agreement that was presented to him for resolution. Although the arbitrator found one breach by the DeGeorges and one breach by Taffae, neither party owed damages because the $5,000 liquidated damages per breach offset each other. Although neither party

8

prevailed at the arbitration, the arbitrator nevertheless awarded fees and costs to the DeGeorges because Taffae had rejected their earlier section 998 offer to compromise and he did not obtain a more favorable award from the arbitration.

We now explain why none of Taffae's challenges to the arbitrator's award is persuasive.

### i. The Arbitrator Did Not Adjudicate an Unsubmitted Claim

Taffae argues the arbitrator exceeded his powers because the "$5,000 award to Mrs. DeGeorge was not based on any pleaded claim or evidence presented." We disagree. The award was plainly made for Taffae's breach of the Stay-away Agreement on April 23, 2021, when he stalked Mrs. DeGeorge in Santa Monica. That issue was squarely before the arbitrator. Mr. DeGeorge made a counterclaim for that breach in his answer to the first amended complaint. In addition, Mrs. DeGeorge's answer pled an affirmative defense that Taffae's claims were "barred by an offset for the breaches of the Settlement Agreement by Taffae." Taffae "gave no credible explanation for his behavior" that day. Taffae was thus "on notice that [he] could be found liable on [that] claim." (*Greenspan*, *supra*, 185 Cal.App.4th at p. 1449.)

Taffae's reply brief asserts he "was never notified that a counterclaim by Mrs. DeGeorge was at issue and therefore was never provided a fair opportunity to defend." To the extent he is suggesting Mr. DeGeorge could not bring a claim for the April 23, 2021, breach, we do not agree. " ' "[T]he essence of arbitration is its freedom from the formality of ordinary judicial procedure." ' " (*Greenspan¸ supra*, 185 Cal.App.4th at p. 1449.) These parties agreed to arbitrate disputes arising from the Stay-away

Agreement and any alleged breaches thereof, and " ' "they must be content with [arbitration's] informalities." ' " (*Ibid.*) Mr. DeGeorge properly brought the issue of Taffae's April 23, 2021, breach of the Stay-away Agreement before the arbitrator, and the arbitrator did not exceed his powers in deciding it.

We also reject Taffae's factual premise that the arbitrator awarded $5,000 to Mrs. DeGeorge. Drawing " 'every reasonable inference to support the award,' "[5] we conclude the arbitrator awarded "the DeGeorges $5,000." Taffae's assertion to the contrary takes a single sentence in the four-page arbitration award out of context. Most of the arbitration decision refers to "the DeGeorges" together, save for when the factual actions of one or the other individual are at issue. In light of that overall context, we read the one sentence noting Taffae's liability to Mrs. DeGeorge simply as shorthand distinguishing the arbitrator's finding Taffae liable for stalking Mrs. DeGeorge in April 2021 from his finding Taffae did not stalk the DeGeorges in February 2020.[6]

---

[5]    See *Ajida, supra,* 87 Cal.App.4th at page 541.

[6]    Moreover, the arbitrator's treating "the DeGeorges" as one party and Taffae as the other is entirely consistent with both the Settlement Agreement and the Stay-away Agreement, which likewise defined "the DeGeorges" as a " 'Party.' " Although Taffae's reply brief argues to the contrary, " 'any doubts as to the meaning . . . of an arbitration agreement are for the arbitrator[] and not the court to resolve.' " (*Advanced Micro, supra,* 9 Cal.4th at p. 372.) Here, the text of the arbitrator's award demonstrates the arbitrator viewed "the DeGeorges" as one party, which is consistent with the Settlement Agreement and the Stay-away Agreement.

### ii. The Arbitrator Did Not Inappropriately Merge Separate Claims

Taffae's first amended complaint alleged the DeGeorges violated the Settlement Agreement by breaching clause 1(j) of the Stay-away Agreement. Taffae claimed the violation occurred when "[e]ither M[arco] DeGeorge or K[im] DeGeorge, acting jointly or in their individual capacity called the Santa Monica Fire Department and/or the Santa Monica Police Department (government agencies), knowing there was no emergency or threat of imminent bodily harm, and without seeking to resolve the issue informally through The Party's respective counsel during a 10-business day window after the issue was identified in writing by counsel for the complaining party, as is required under the terms of the Settlement Agreement." Taffae argues that he asserted two separate breach of contract claims: one against Mr. DeGeorge and one against Mrs. DeGeorge.

To the extent that is an accurate characterization of the claims in the first amended complaint, the arbitrator nevertheless reasonably analyzed Taffae's claims the agreement was breached by calls made to the Santa Monica Fire Department and to the Santa Monica Police Department.[7] He determined no breach occurred with the call to the fire department, but "[t]he DeGeorges violated the settlement agreement when they summoned the police." We reject Taffae's factual contention "the Arbitrator found both DeGeorges

---

[7] The arbitrator also analyzed and rejected Taffae's claims that (1) "the DeGeorges made a number of misrepresentations in the course of their dealings with the fire and police department[s]," and (2) "the DeGeorges violated the agreement by playing unreasonably loud music on Super Bowl Sunday."

11

breached the Agreement."[8] On the contrary, the arbitrator found one breach by "the DeGeorges" party in calling the police.To the extent Taffae takes issue with that factual finding, we cannot review it. (See *Richey*, *supra*, 60 Cal.4th at p. 916 ["courts cannot review arbitration awards for errors of fact or law"]; see also *id.* at p. 917; *Gueyffier*, *supra*, 43 Cal.4th at p. 1186 ["it was for the arbitrator to find the facts, not for the superior court or this court"].)

Because the arbitrator found one breach of the Stay-away Agreement by the DeGeorges party, he duly awarded Taffae $5,000 for that one breach as provided in the Stay-away Agreement. (See *Gueyffier*, *supra*, 43 Cal.4th at p. 1185 ["[t]he arbitrator was empowered to interpret and apply the parties' agreement to the facts he found to exist"].) That remedy was rationally related to the Stay-away Agreement and was squarely within the arbitrator's power. (See *Greenspan*, *supra*, 185 Cal.App.4th at p. 1449 ["the remedy was rationally related to the breach"]; *Advanced Micro*, *supra*, 9 Cal.4th at p. 381 [court will vacate an arbitration award "only if . . . the award was based on an extrinsic source"]; cf. *Gueyffier*, at p. 1185 [arbitrator

---

[8] Likewise, there is no support in the record for Taffae's assertion the arbitrator "treat[ed] Mr. DeGeorge and Mrs. DeGeorge as joint tortfeasors." The Stay-away Agreement expressly made "the DeGeorges" liable for liquidated damages for any breaches committed by the DeGeorges. Taffae's reliance on a case discussing equitable indemnity is misplaced. (See *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group* (2006) 143 Cal.App.4th 1036, 1040 ["[i]t is well settled in California that equitable indemnity is only available among tortfeasors who are jointly and severally liable for the plaintiff's injury" (italics omitted)].)

12

exceeds his powers when he awards a remedy " 'expressly forbidden by the arbitration agreement' "].)

### iii.  The Fee Award Was Appropriate

Taffae argues the arbitrator erred in awarding fees to the DeGeorges. His brief acknowledges that claimed error "depends entirely on the Arbitrator's unauthorized creation and adjudication of Mrs. DeGeorge's non-existent claim." Because we have already explained the arbitrator did not create or adjudicate a nonexistent claim, Taffae's argument regarding fees necessarily fails. And even if an error had been made, we could not vacate the award on that ground.[9] (See *Heimlich v. Shivji* (2019) 7 Cal.5th 350, 367 ["ordinary errors in ruling on costs are not subject to correction, nor do they serve as a basis for vacating an award"].)

### DISPOSITION

The judgment is affirmed. Costs are awarded to the DeGeorges. (See Cal. Rules of Court, rule 8.278(a)(1)–(2).)


RICHARDSON, J.


WE CONCUR:


LUI, P. J.     ASHMANN-GERST, J.

---

[9] We also note California law supports the arbitrator's focus on whether Taffae "obtain[ed] a more favorable . . . award" than the offer made by the DeGeorges. (§ 998, subd. (c)(1).)